UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

NOV 19 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams  DEPUTY CLERK

In re:

James Arthur Pascucci
Christel Pascucci

                    Debtor(s).

Richard J Segal, Judith Segal

                    Plaintiff(s),

  v.

James Arthur Pascucci

                    Defendant(s).

Case No.: 1:11-bk-15189-GM

Adv No: 1:12-ap-01040-GM

Chapter 7

**MEMORANDUM OF OPINION GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING OR, ALTERNATIVELY, TO LIMIT THE AMOUNT IN CONTROVERSY [DOCKET NUMBER 5]**

Date: 9-11-2012
Time: 10:00 A.M.
Courtroom: 303

Background

On 1/22/07 Richard and Judith Segal filed an action for breach of fiduciary duty and fraud against James Pascucci, Christel Pascucci, and Remax in the Los Angeles Superior Court (the "Superior Court Action")[1] alleging that Pascucci, the listing agent for the Segals' house, induced the Segals to sell their home to him at a below-market price. Pascucci represented that it would be used as his personal residence, but instead he held the home for about eighteen months, performed some renovations and then listed it for sale at a price that was $5 million more than he had paid to the Segals. The Segals sought damages of $2 million or more.

---

[1] LASC Case #BC 364994. Complaint is Ex. D to Opposition to Motion to Dismiss (doc. #7). (References to docket numbers not otherwise specified are to this adversary proceeding 1:12-ap-01040-GM.)

-1-

On 2/29/08 an involuntary bankruptcy petition was filed against Richard Segal in the Riverside Division of the United States Bankuptcy Court for Central District of CA.[2] (Although Judith Segal was also originally named in the petition, she was later removed by the petitioning creditors.) After over a year of extensive litigation, an order for relief under chapter 7 was entered on 3/25/09[3] and Steven Speier was appointed as the chapter 7 trustee. On 6/17/09 Segal filed his bankruptcy schedules and statement of affairs and a mailing matrix.[4] On Schedule B he listed as other personal property: "Richard Segal and Judith Segal v. James Pascucci  Case # BC364994 LA Sup Ct" and valued it at $2,000. He then claimed that amount as exempt on Schedule C. He did not include Pascucci on the mailing matrix and Pascucci received no notice from the court of the Riverside bankruptcy case.

Segal's §341(a) meeting was continued from time-to-time until the trustee finally filed a report of no distribution on 11/18/11. During the interim, Segal amended schedule C several times, but always included the Superior Court Action against Pascucci and valued the exemption at $2,000. Schedule B was never amended. On 3/9/12 the discharge was entered in Segal's bankruptcy case.

While Segal's chapter 7 case was proceeding, on 4/27/11 James and Christel Pascucci filed this voluntary chapter 7 petition, which listed a lawsuit with Richard and Judith Segal and the Segals' state court counsel on Schedule F. The first meeting of creditors was scheduled for 5/31/11, and the deadline for objections to discharge was set for 8/1/11. The Notice of the §341(a) meeting, which contained the deadline for filing an objection to discharge, was mailed to the Segals at 74350 Coral Bells Circle,

---

[2] 6:08-bk-12110-MJ. ("Riverside Case").
[3] Riverside Case, doc. #178.
[4] Riverside Case, doc. # 255.

-2-

Palm Desert, CA 92260, and to their counsel at Lang, Hanigan & Carvalho at 21021 Ventura Blvd., Suite 450, Woodland Hills, CA 91364.

On 2/1/12 the Segals filed a non-dischargeability complaint (the "Complaint") against Pascucci initiating the instant adversary proceeding. The Complaint alleges causes of action under §§ 523(a)(2)(A), (a)(4) and (a)(6) and seeks at least $2.5 million in damages and a declaration that the judgment is nondischargeable.

On 3/7/12, Pascucci filed the instant Motion to Dismiss, arguing that the Complaint, which was filed six months after the deadline for objections to dischargeability, is time-barred and should be dismissed for failure to state a claim. Alternatively, this motion requests that the value of Segal's claim be limited to $2,000, which is the value of the claim as scheduled by Segal in his bankruptcy petition. Since this motion was filed, there are been several rounds of briefs, supplemental briefs, oppositions and replies. For simplicity, the arguments of each side in these various documents are summarized here as the motion and opposition and essentially focus on two main issues: (1) whether Segal's late filing of the adversary complaint may be excused due to lack of timely notice of the Pascucci bankruptcy and (2) whether the amount of potential damages should be limited to the $2,000 scheduled and exempted in Segal's bankruptcy.

(1) <u>Should Segal's late filing of the adversary complaint be excused due to lack of timely notice of the Pascucci bankruptcy?</u>

<u>Motion</u>:

The Segals' address used by Pascucci in his bankruptcy case was obtained from a 12/5/07 deposition of Segal in the Superior Court Action. Segal's attorney in the

-3-

Superior Court Action was also served with the notice of bankruptcy. The Pascucci's had no other address since Segal had not scheduled them in his bankruptcy.

In fact, Segal was avoiding any notice because even in the deposition he gave the wrong address. The correct house number was 74530, not 74350 as he stated in his deposition. If the mail had been sent to the correct address, there is every reason to think that Segal would have received it.

Beyond that, Segal lied about when he learned of the Pascucci bankruptcy case. In his declaration, the Segal's Chapter 7 trustee said that Segal told him about the Pascucci bankruptcy, which Segal's trustee then verified online. This was before the Trustee filed his no-asset report (11/17/11), although Segal claims that he did not find out until 12/11. Since he lied about this, why should the court believe anything he says?

**Opposition**

(1) The Pascucci's used an address that had been provided in the 12/5/07 deposition and was clearly a temporary location due to the illness of Ms. Segal's parents (the Otrandos). The Otrandos left the Coral Bells Circle location in 9/09 - Mr. Otrando was hospitalized until 6/30/10 and died on 2/21/12 and Mrs. Otrando moved to LA and died on 6/20/10 in LA without ever returning to Palm Desert. The Palm Desert house was foreclosed on and sold prior to Segal's bankruptcy.

(2) On 5/28/08 Segal's lawyer negotiated a settlement in the Superior Court Action with Remax for $136,000. At that time the Segals were living in Camarillo.

(3) Richard Segal is an active member of the California State Bar and has always kept his current address on file at the California State Bar.

(4) During the course of the Segal bankruptcy, the Segals filed a notice of the bankruptcy stay in the Superior Court Action and also filed notices of continuance of the

stay four times from 6/15/09 through 2/14/11.  Therefore the Pascuccis knew that the trustee in the Segal bankruptcy case had an interest in the litigation and also that Segal was in bankruptcy.

(5) Pascucci's counsel in the Superior Court Action never notified Segal's counsel (Timothy Hanigan) of the Pascucci bankruptcy filing and Mr. Hanigan testified that he did not receive any notices from the bankruptcy court.[5]  On 7/1/10 (10 months prior to the Pascucci's bankruptcy petition), he moved his office from 21021 Ventura Blvd. to 21550 Oxnard St.[6], but 21021 Ventura Blvd. was the address used in the bankruptcy notices.

(6) Richard Brownstein has joined the firm of Greenberg & Bass, which represents the Pascuccis.  He had previously represented Richard Segal and knew of all of Segal's addresses.

(7) Segal provides his PACER records to show that the first time that he visited the Pascucci bankruptcy case on PACER was on 11/21/11.[7]

**Analysis**

Generally, pursuant to 11 USC §727(b), a chapter 7 debtor's prepetition debts will be discharged.  However, §523(a) excepts certain types of debts from discharge, including debts arising out of certain wrongful conduct that is specified in §523(a)(2), (4) and/or (6) and alleged in the Complaint.   FRBP 4007(c) prescribes the deadline for requesting a nondischargeability determination under §523(a)(2),(4) or (6) —stating that such complaint must be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)…On motion of a party in interest, after hearing on

---

[5] Hanigan Dec., which is attached to Opposition to Motion to Dismiss (doc. 10), ¶3.
[6] Id. ¶5.
[7] Segal Dec, filed 9/27/12 (doc. 18).

notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired."

In the case before this Court, 8/1/11 was the last day to file complaints under §523(a)(2), (4), and (6) (as well as the last day to file a motion seeking an extension of that deadline). The Complaint commencing this adversary proceeding was filed on 2/1/12. Segal quite clearly failed to file the complaint within the deadline specified by FRBP 4007(c) and did not timely seek an extension of the deadline.

However, if the debtor did not properly schedule the claimant so that the claimant had notice of the bankruptcy in time to timely file a §523(a)(2), (4), or (6) complaint, the claimant can still file a complaint for non-dischargeability under §523(a)(3)(B), which is not covered by the FRBP 4007(c) deadline.

> The correct test [to determine if a debt is excepted from discharge under 523(a)(3)] is whether this debt was scheduled in time to permit a timely request for a determination of discharge or a timely proof of claim. Section 523(a)(3)(A) and (B). In order for a debt to be duly listed, the debtor must state the name and address of the creditor. Bankruptcy Rule 1007. The burden is on the debtors to use reasonable diligence in completing their schedules and lists. If a creditor proves that an address is incorrect, the debtor must justify the inaccuracy in preparing his schedules.[8]

The Court finds the Pascuccis did not use reasonable diligence in preparing their schedules: Segal's address is incorrect and the Pascuccis did not justify this inaccuracy. The Pascuccis' schedules used an address for Segal that he had provided in a 2007 deposition. By the Pascucci's 4/27/11 petition date, neither the Segals nor anyone with any relation to them had lived on Coral Bells Circle in Palm Desert for two years. There is no evidence that Segal *intentionally* misstated his Coral Bells Circle

---

[8] Lubeck v. Littlefield's Rest. Corp. (In re Fauchier), 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987)(case citations omitted); see generally 4 Collier on Bankruptcy 16th Ed., ¶523.09[2][b] for a discussion of the requirement to use reasonable diligence to provide a correct address.

street number, but the misstatement is ultimately irrelevant because there would have been no mail forwarding from Coral Bells Circle by 2011.  Similarly, Segal's Superior Court Action attorney testified that he did not receive any notices of the Pascucci bankruptcy.  The notices were sent to him at an address he had moved from 10 months prior to the Pascucci petition date.  (There is no evidence as to why the notices to Segal's attorney sent within the year of his office move were not forwarded to his new address or as to whether the notices were returned to Pascucci or to the Court or not returned at all.)    Segal was not in hiding and his correct address was available on the State Bar website.  Although the Court does not find that Pascucci intentionally failed to provide the Court with the correct address, this burden was on him to use reasonable diligence and he failed to do so.

As a result, Segal did not receive notice of the Pascucci's bankruptcy in time to file a complaint by the 8/1/11 deadline.  There is some question as to when Segal first found out about the Pascucci bankruptcy.  Segal submitted his PACER records showing that he first visited the Pascucci bankruptcy case docket  on 11/21/11, which was well after the bar date for filing a complaint under §523(a)(2), (4), or (6).  Pascucci is relying on the testimony of Mr. Speier:  that Mr. Speier learned of the Pascucci bankruptcy from Segal prior to the 11/17/11 date on which Mr. Speier filed his "no asset" report in Segal's chapter 7.  But this evidence is irrelevant because it does not establish that Segal learned of the Pascucci bankruptcy in time to file a nondischargeability complaint by the 8/1/11 deadline.[9]  Thus FRBP 4007(c) is not dispositive and no motion to extend

---

[9] Pascucci also argues that the discrepancies between Segal's initial testimony that he learned of the Pascucci bankruptcy in 12/11, Segal's later submission of PACER records showing an 11/21/11 date, and Speier's testimony that Segal told him of the bankruptcy prior to 11/17/11 undermine Segal's credibility.  See Amended Fourth Supplemental Reply (doc. 20).  But, given that these differences have no relevance to the issue, they appear much more like minor lapses of memory than intentional lies.  Even if Segal had diminished credibility on this point, the

the time to file or to be excused for filing after the deadline need be made.

Although the Segals argue that their failure to comply with time limits should be excused based on equitable doctrines, such as estoppel, waiver or equitable tolling, the Court need not walk down that path. When a creditor does not receive notice sufficiently before the filing bar date, he may file an action under §523(a)(3)(B).

The Bankruptcy Code and Rules contain no deadline for filing a 523(a)(3)(B) complaint. FRBP 4007(c) sets the limit only if the complaint is filed under 11 USC §523(c), which specifically excepts actions brought under §523(a)(3)(B). And FRBP 4007(b) states that "a complaint other than under §523(c) may be filed at any time." As the Bankruptcy Code and Rules do not set any time limit for filing actions under 523(a)(3)(B) and FRBP 4007(b)[10], it appears that the only relevant statute of limitations in a §523(a)(3)(B) action is the state statute of limitations for the underlying tort (e.g. fraud, conversion, willful and malicious injury): was an action on the underlying torts brought within the relevant limitations period? In the case at hand, the Superior Court Action was filed on 1/22/07 and seeks recovery for a variety of torts (breach of fiduciary duty, constructive fraud, intentional misrepresentation, negligent misrepresentation and negligence) alleged to have occurred in 2004. The statute of limitations on these torts appears to range from two to four years under California Code of Civil Procedure §338 (3 years for fraud or mistake), §339 (2 years for liability not founded on a writing) and

---

only remaining relevant evidence would be his PACER records which indicate that he learned of the Pascucci bankruptcy case on 11/21/11.

[10] Rule 4007(b) does not provide for any time limit for filing an action to determine dischargeability. It expressly provides that a closed bankruptcy case may be reopened without payment of a filing fee in order to determine such an action. Two Ninth Circuit Court of Appeals decisions, while not directly addressing the issue, have suggested no such time limit exists. Other cases support the conclusion that no time limit exists for filing such an action under Rule 4007(b). Indeed, the parties have not cited, nor has the Panel found, any reported case that imposed a time limit for filing an action under Rule 4007(b). Irons' complaint thus was not time barred by the Code or the Bankruptcy Rules.
Irons v. Santiago (In re Santiago), 175 B.R. 48, 52 (B.A.P. 9th Cir. 1994).

§343 (four years for catchall). So, the relevant statutes of limitations would run two to four years from the 11/05 date Segal's allege they had reason to suspect Pascucci had misrepresented the property's value: 11/07 -11/09.[11] Accordingly, it appears that Segal filed the Superior Court Action within the applicable limitations period, and there have been no statute of limitations issues raised with respect to the Superior Court Action in any event.

The next question is whether the Court should allow Segal to amend the Complaint to allow this adversary action to proceed under §523(a)(3)(B) or should dismiss this complaint and merely allow the existing action in state court to proceed[12], perhaps with an amendment to the complaint to request that any judgment be declared non-dischargeable under §523(a)(3)(B). Courts across the nation have all agreed that the bankruptcy court and the state court have concurrent jurisdiction on §523(a)(3) causes of action, based on 28 U.S.C. §1334(b).[13] As a result of this concurrent jurisdiction, some courts have elected to abstain from these 523(a)(3) matter in favor of state courts.[14] Abstention is governed by 28 U.S.C. § 1334(c), which provides in relevant part: "(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a

---

[11] See Complaint, which is Exhibit D to Opposition to Motion to Dismiss, ¶7.

[12] Technically, the Superior Court Action could still be removed from state court. FRBP 9027 allows filing of the notice of removal of litigation pending at the petition date for 30 days after the entry of the order terminating the stay of the litigation under Bankruptcy Code §362. In this chapter 7 case, the case has not been closed or dismissed and the debtors have not yet been granted or denied a discharge, so the stay generally remains in effect. 11 U.S.C. §362(c)(2). Nor has Segal been granted relief from the stay to proceed with the Superior Court Action. The stay remains in effect and the FRBP 9027 deadline for filing a notice of removal has not yet been triggered.

[13] See, e.g., McGhan v. Rutz (In re McGhan), 288 F.3d 1172, 1176 (9th Cir. 2002); Massa v. Addona (In re Massa), 187 F.3d 292, 295 (2d Cir. 1999); Mitchell v. Bigelow (In re Mitchell), 418 B.R. 282, 286-87 (B.A.P. 8th Cir. 2009); Lopez v. Flores (In re Lopez), 2012 Bankr. LEXIS 3751 at 10 (Bankr. S.D. Tex. Aug. 15, 2012).

[14] See, e.g., In re Fajardo, 2009 Bankr. LEXIS 2821, 9 (Bankr. D.N.M. Apr. 15, 2009); Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin), 179 B.R. 913, 928-29 (Bankr. E.D. Cal. 1995).

particular proceeding arising under title 11 or arising in or related to a case under title 11."

The Ninth Circuit considers twelve factors in determining whether abstention is proper:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.[15]

In this case, these factors balance relatively evenly. This action alleges garden variety state law based-claims of fraud, negligence, etc., but the non-dischargeability issues are much more frequently dealt with in this court. There is already an action pending in state court and this Court has heard motions in this adversary, but given the passage of time, neither court carries any deep familiarity with the facts or issues involved in this proceeding. Resolution of this matter should have little effect on administration of this estate and little relation to proceedings in the main case, but this action has no relationship with any matters in state court either. The Court can see no compelling reason to abstain from this case, unless the parties have a right to a jury.

The right to a jury trial would strongly favor abstention, as this Court is unwilling to add to the burdens of the overworked district court. However, whether the parties would have a right to a jury in this matter is not entirely clear. The Ninth Circuit has

---

[15] In re Eastport Associates, 935 F.2d 1071, 1075-76 (9th Cir. 1991)(quoting In re Tucson Estates, Inc., 912 F.2d 1162, 1167 (9th Cir.1990)(quoting In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)).

held there is no right to a jury on the non-dischargeability issue, but did not decide whether there is a right to a jury on the determination of the underlying liability.[16]

The Ninth Circuit B.A.P has held that there is no right to a jury trial on the underlying issues of liability and damages in a nondischargeability proceeding.[17] They reasoned that the determination of liability and damages in non-dischargeability proceedings is not meaningful different from the same determination in the claims allowance process, where there is no right to a jury.[18] The panel also reasoned that determination of liability and damages is a mere adjunct to the non-dischargeability issue and thus is "integral to the restructuring of the debtor-creditor relationship."[19]

A recent Idaho bankruptcy court decision likewise denied a right to jury, reasoning that "[a]djudication of the underlying claim, which arises under non-bankruptcy law, becomes part and parcel of the dischargeability determination and thus integral to restructuring the debtor-creditor relationship."[20]

Also of note is a Ninth Circuit decision[21] holding that the bankruptcy court has *jurisdiction* to enter a monetary judgment in non-dischargeability action, but relying on the reasoning of a Missouri bankruptcy court decision that held there was no right to a *jury* in determination of the money judgment:

> We are particularly persuaded by the analysis of one bankruptcy judge:
> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to

---

[16] See, e.g., American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122 (9th Cir. 1996).
[17] Locke v. U.S. Trustee (In re Locke), 205 B.R. 592, 600 (B.A.P. 9th Cir. 1996).
[18] Locke, 205 B.R. at 600 (relying on Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990)).
[19] Id. (quoting Langenkamp, 498 U.S. at 44-45).
[20] Stanbrough v. Valle (In re Valle), 469 B.R. 35, 42-43 (Bankr. D. Idaho 2012)(relying on Locke, 205 B.R. 592, Grandfinanceria S.A. v. Nordberg, 492 U.S. 33 (1989), and Langenkamp, 498 U.S. 42.
[21] cf. Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015 (9th Cir. 1997).

> separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt.[22]

It appears that the analysis underlying these decisions survives Stern v. Marshall.[23] However, these cases were decided in the context of §523(a)(2), (4) or (6) and are premised on the exclusive jurisdiction of bankruptcy court, both as a formal jurisdictional matter and because it is impossible to separate non-dischargeability from the underlying liability. Thus it only makes sense to the try the entire matter in bankruptcy court where the non-dischargeability *must* be tried.

In a §523(a)(3) action, however, the debtor has lost the exclusive jurisdiction of the bankruptcy court. In this context, where the bankruptcy court and the state court have concurrent jurisdiction, the reasoning of these cases denying a jury on the underlying claim based on a jurisdictional analysis, does not seem applicable. Furthermore, a recent bankruptcy court decision in the Ninth Circuit has upheld the creditor's right to have a jury liquidate a claim subject to a §523(a)(6) proceeding.[24] So it is quite possible that the parties could be found to have a right to a jury even if the case remains in the federal court system.

And if the parties do indeed have a right to a jury trial, there is still time for a timely jury demand. FRCP 38 incorporated by FRBP 9015 gives the parties 14 days after "the last pleading directed to the issue is served" as a deadline for filing a jury demand. That last pleading is typically the answer, which has not yet been filed in this adversary proceeding because the defendant has this Rule 12(b)(6) motion for dismissal pending.

---

[22] Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015, 1017-1018 (9th Cir. 1997) (quoting In re Devitt, 126 Bankr. 212, 215 (Bankr. D. Md. 1991)).
[23] 564 U.S. ___, 131 S. Ct. 2594 (2011). See Pearson Educ., Inc. v. Almgren, 685 F.3d 691, 695 (8th Cir. 2012)(applying Langenkamp, 498 U.S. 42); see generally Valle, 469 B.R. 35.
[24] Ellison v. Hawthorne (In re Hawthorne), 2012 Bankr. LEXIS 1517 (Bankr. D. Alaska Apr. 4, 2012).

Unless both parties waive the right to jury, the Court will abstain from this adversary proceeding and will allow the plaintiff to go forward in state court.

(2) <u>Should the amount of potential damages be limited to the $2,000 listed and exempted in Segal's bankruptcy?</u>

**Motion**

This motion is based on the fact that Segal valued the claim against Pascucci at $2,000 in his bankruptcy schedules although both the Superior Court Action and this adversary proceeding seek damages in excess of $2 million.  Because the claim was community property, the valuation is for the whole claim, not just half of it and therefore the whole claim was valued by Segal in his bankruptcy under penalty of perjury for $2,000.  Judicial estoppel requires that the claim be limited to $2,000.  And if it is greater than the $2,000, that excess belongs to the trustee and it is the trustee who must proceed to collect it.

**Opposition**

In opposition, Segal asserts that the valuation was reduced because the bankruptcy estate owned only 1/2 of it, the settlement with the brokerage house for $136,000 reduced the claim and the costs of litigation reduced the expected value. There were multiple §341(a) meetings and several meetings with the trustee. The asset was disclosed, so judicial estoppel does not apply.  The Trustee thoroughly investigated the asset.  Per the Trustee's declaration, he decided that it would not be economically feasible to pursue the litigation against Pascucci because of the cost and uncertainty of success and collectability.

Eventually the trustee filed a non-asset report and abandoned the property.

Segal received his discharged on 3/9/12.

**Other Evidence**

After a variety of hearings, the Court finally received transcriptions of all of the §341(a) meetings and also the testimony of the chapter 7 Trustee. Mr. Speier testified that Segal told him that Pascucci had or would file bankruptcy. Speier had numerous phone calls with Segal and they discussed the Pascucci matter as well as the Silverstein one. Segal gave Speier a copy of the Superior Court lawsuit and Speier looked at it and at the Superior Court website and determined that it had no value to the estate. Segal told him that it was a "nuisance lawsuit" because he had already recovered from Remax. Before he filed the no asset report, Speier checked PACER and found the Pascucci bankruptcy.[25]

**Analysis**

Judicial estoppel is an equitable doctrine that arises when one party gains an advantage by asserting one position and then later asserting a position clearly inconsistent with the initial one.[26] It also is used to protect the dignity of judicial proceedings, assure orderly administration of justice and "protect against a litigant playing fast and loose with the court."[27] Although there is no hard-and-fast list of circumstance required for the Court to apply judicial estoppel, the Supreme Court has laid out several factors which are usually present in such a situation:

> First, a party's later position must be "clearly inconsistent" with its earlier position [citations omitted]. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," [citations omitted]. . . . A third consideration is whether the party seeking to assert an

---

[25] Testimony of Steven M. Speier, Sept. 11, 2012.
[26] Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)(quoting dissent by Hall, J. in Religious Tech. Center v. Scott, 869 F.2d 1306, 1311 (9th Cir. 1989)..
[27] Id.

-14-

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[28]

The Court noted that other factors can be considered and indicated that judges should use a balancing test to see which side the equities favor.

In the Ninth Circuit, judicial estoppel is limited to cases in which the court "relied on, or 'adopted,' the party's previous inconsistent position."[29] This can be in two separate proceedings and is not limited to inconsistent positions in the same case.[30] In a bankruptcy context, if the Debtor fails to list a potential claim in his schedules, he cannot resurrect that claim and seek to prosecute it on his own behalf.[31]

On its face, Segal's position in this adversary (seeking damages of $2.5+ million) appears to meet the first prong of the New Hampshire v. Maine test: it seems vastly inconsistent with his scheduled $2000 valuation of this asset and claim of exemption. Even accepting Segal's argument that he was only valuing his 1/2 interest (which is not accurate because this is community property and thus 100% is included in the estate); a $4000 valuation is not appreciably more consistent with $2.5 million.   Furthermore, there is no showing as to why damages might have increased since the Segal bankruptcy, as these type of damages are not based on later happenings, but accrue at the time of the tort.  The prepetition settlement with Remax that must be deducted from an eventual judgment against Pascucci is *de minimis* at less than 6 percent of the amount sought in this adversary complaint.

However, having said this, Segal was not asked to schedule the amount of the claim, but he was required to put down the "current value of debtor's interest in property,

---

[28] New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).
[29] Interstate Fire & Casualty Co. v. Underwriters at Lloyd's , London, 139 F.3d 1234, 1239 (9th Cir. 1998); Masayesva ex rel. Hopi Indian tribe v. Hale, 118 F.3d 1371, 1382 (9th Cir. 1997), cert. denied, 522 U.S. 1114 (1998).
[30] Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 605 (9th Cir. 1996).
[31] See Hamilton v. State Farm, 270 F.3d 778, 783 (9th Cir. 2001) and cases noted therein.

without deducting any secured claim or exemption" and the "current value of property without deducting exemption."[32]  The bankruptcy schedules require that the Debtor realistically project what the chose in action is worth, adjusting for the costs of litigation and collection, delays, uncertainties, and the possibility that the plaintiff will lose the case.  The prayer in the complaint has a very different purpose.  Is it inconsistent to seek damages in a much larger amount, but to be aware that the probable collectability reduces the value geometrically?  Not really.

This is what the Trustee considered – in his business judgment what was the estate likely to net in actual recovery from Pascucci -- and this is the figure that Segal was asked to reveal.  The chapter 7 trustee's job is to liquidate the assets.  When the asset is a lawsuit, Trustees will pursue it for the benefit of the estate (generally hiring contingency counsel to do so), sell it (sometimes to the Debtor and sometimes to the defendant), or abandon it as having too little certainty or collectability to risk estate time and assets. It is the duty of the Debtor to provide the Trustee with all necessary information about the lawsuit that the Trustee requests – a copy of the complaint, and summary of the factual basis and supporting evidence as requested by the Trustee, and any information on the probable amount of damages and ability to collect some or all of them.  It is then in the hands of the Trustee to determine which course of action to take. It appears from Mr. Speier's testimony that he did some research before deciding not to proceed with this lawsuit.  He located the Pascucci bankruptcy, he checked the Superior Court docket, and he reviewed the complaint.  It appears that he simply felt that Pascucci did not have the assets to buy the litigation and that due to questionable collectability it would not be worth hiring counsel, even if he could obtain contingency

---

[32] Form for Schedules B and C, Riverside Case doc. #255, pp. 6 & 7.

counsel, to pursue this in the Pascucci bankruptcy. Whether his decision was sound or not is not the issue before this court.

The only question is whether Segal in any way hid information or misled the Trustee into making his decision. And there is no evidence that he did. His assertion of damages is not an inconsistent judicial statement with his valuation of his claim. These are two different items, not two descriptions of the same item. Since there is no inconsistent statement, judicial estoppel cannot be applied and the Court need not look at the other possible elements.

<u>Ruling</u>

For the reasons stated above, the Motion to Dismiss is GRANTED WITH LEAVE TO AMEND TO BRING THIS ADVERSARY UNDER 11 U.S.C. §523(a)(3)(B) and the alternative Motion to Limit the Amount in Controversy is DENIED.

The parties will have until December 4, 2012 to file (and serve on opposing counsel) a waiver of their right to a jury trial in this proceeding. If waivers are not timely filed by both parties, this court will abstain so that this litigation can proceed in state court. If there is a procedural problem in the state court with amending that complaint to add a cause of action under 11 U.S.C. 523(a)(3)(B), the Segals can bring a motion to reopen this adversary proceeding.

###

DATED: November 19, 2012

_____
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **MEMORANDUM OF OPINION GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING OR, ALTERNATIVELY, TO LIMIT THE AMOUNT IN CONTROVERSY**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Robert Bass Email: rbass@greenbass.com
James Stang Email: jstang@pszjlaw.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Richard Segal
P.O. Box 7193
Porter Ranch, CA 91327

Steven Speier
P.O. Box 7637
Newport Beach, CA 92658

James Pascucci
5933 Annie Oakley Road
Hidden Hills, CA 91302

David Gottlieb – Chapter 7 Trustee
15233 Ventura Blvd. 9th Floor
Sherman Oaks, CA 91403-2201

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9021-1.1.NOTICE.ENTERED.ORDER**